UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**VIRGILIO FERNANDO ACEVEDO a/k/a**
**VIRGILIO FERNANDO ACEVEDO RIVERA a/k/a**
**VIRGILIO F. ACEVEDO RIVERA a/k/a VIRGILIO**
**ACEVEDO RIVERA,**                              Chapter 13
    Debtor                   Case No. 14-15154-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**VIRGILIO FERNANDO ACEVEDO a/k/a**
**VIRGILIO FERNANDO ACEVEDO RIVERA a/k/a**
**VIRGILIO F. ACEVEDO RIVERA a/k/a VIRGILIO**
**ACEVEDO RIVERA; JUAN M. RUIZ RIVERA**
**T/C/C JUAN MIGUEL RUIZ RIVERA; VICENTE**
**PÉREZ ACEVEDO**,
    Plaintiffs

v.                                               Adv. P. No. 16-1011

**DOMINGO ACEVEDO BAYRON a/k/a DOMINGO**
**F. ACEVEDO BAYRON a/k/a DOMINGO**
**FERNANDO ACEVEDO BAYRON, et al.,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is a Verified Complaint filed by Virgilio Fernando Acevedo (the "Debtor") joined by two non-debtor parties, Juan M. Ruiz Rivera and Vicente Perez Acevedo. The Complaint contains allegations that purportedly support the Debtor's assertion that he has ownership interests in properties located in Rincon,

1

Puerto Rico. For the reasons set forth below, this Court abstains from this proceeding pursuant to 28 U.S.C. § 1334(c)(1).

## II. BACKGROUND

A. <u>The Debtor's Present Chapter 13 Case</u>

The Debtor filed a Chapter 13 petition on November 3, 2014.[1] On Schedule B-Personal Property, the Debtor listed the following as a contingent interest in the estate of a decedent:

> Claimed Interest in Mother's inheritance (Puerto Rico) which, Debtor believes that [sic] was transferred to third parties fraudulently, while Mother and Father were married and had community property which was not properly divided in the parents' divorce proceedings. Debtor's brother owned 50% of this asset. Debtor sold 15% of this asset in order to raise funds to fund his plan and in order to prosecute this matter as the assets are in Puerto Rico and debtor cannot travel there in order to ascertain his interests. Thus, he has now 35% interest. Debtor is to ascertain value.
>
> Claimed Interest in Father's inheritance (Puerto Rico) which, Debtor believes that [sic] was transferred to third parties fraudulently. Debtor owned 100% of this asset. Debtor sold 15% of this asset in order to raise funds to fund his plan and in order to prosecute this matter as the assets are in Puerto Rico and debtor cannot travel there in order to ascertain his interests.

The Debtor also listed the following contingent claim:

> Claim against individulas [sic] related to Debtor's dissapation [sic] and sale of his father's and mother's inheritance in Puerto Rico per AP filed in previous case (13-01094) and 12-12393 (underlying previously dismissed Chapter 13 case) in this District. Debtor's brother owns 50% of this asset. Debtor owned 50% of this asset and his brother owned 50%. Debtor sold 15% of this asset in order to raise funds to fund his plan and in order to

---

[1] The Court may take judicial notice of its own docket. See <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

2

prosecute this matter as the assets are in Puerto Rico and debtor cannot travel there in order to ascertain his interests. [2]

The Debtor ascribed no value to his contingent interests and claims. In his Amended Statement of Financial Affairs, the Debtor disclosed the details of the sale. He revealed that, on October 9, 2014, he sold to Vicente Perez Acevedo a 15% interest in "contingent not ascetained [sic] assests [sic] of his parent's [sic] inheritance" as follows: "Debtor received 3000.00 [sic] cash on 10-9-2014 and will recive [sic] 400 per month for sixty months totaling $24,000.00 for a total of $30,000.00. Mr. Perez-Acevedo performed the

---

[2] The Debtor amended Schedule B on December 12, 2015, revising his description of his contingent interests as follows:

> Claimed Interest in Mother's inheritance (Puerto Rico) which, Debtor believes that [sic] was transferred to third parties fraudulently, while Mother and Father were married and had community property which was not properly divided in the parents' divorce proceedings. Debtor's brother owned 50% of this asset. Debtor is to ascertain value once and in the event assets are recovered.
>
> Claimed Interest in Father's inheritance (Puerto Rico) which, Debtor believes that [sic] was transferred to third parties fraudulently. Debtor is to ascertain value once and in the event assets are recovered.
>
> Claim against individulas [sic] related to Debtor's dissipation [sic] and sale of his father's and mother's inheritance in Puerto Rico per AP filed in previous case (13-01094) and 12-12393 (underlying previously dismissed Chapter 13 case) in this District. Debtor's brother owns 50% of this asset. Debtor owned 50% of this asset and his brother owned 50%. Debtor is to ascertain value once and in the event assets are recovered.
>
> Debtor sold 15% of his interest in the above asset (Contingent Interest in estate of decedent parents) in in [sic] order to raise funds to fund his plan and in order to prosecute this matter as the assets are in Puerto Rico and debtor cannot travel there in order to ascertain his interests.

3

title search and investigation leading Debtor to find and ascetain [sic] his claim inheritance and spent 187.00 hourse [sic] of work on this matter."

On December 11, 2015, this Court entered an order confirming the Debtor's Third Amended Plan, the effective date of which is December 1, 2014. The Debtor's plan provides:

> Debtor will amend the Plan to increase the unsecured dividend in the event that he receives additional and any other income and funds related to the recovery of contingent inheritance assets and any other moneys, if any, adjudicated to him for any reason and from any source. These assets are contingent on their recovery to litigation after ascertaining market value of such assets.

Approximately six weeks after the confirmation of his Chapter 13 plan, on January 29, 2016, the Debtor, together with Juan M. Ruiz Rivera, a resident of Conyers, Georgia, and Vicente Perez Acevedo, a resident of Weston, Massachusetts, filed the Verified Complaint that is now before the Court.

In their Complaint, the Plaintiffs averred that this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and jurisdiction to hear matters related to the interested parties pursuant to Fed. R. Bankr. P. 7019.[3] The Plaintiff identified "thirty-three" Defendants.[4] Twenty-six of those Defendants are identified as residents of the Commonwealth of

---

[3] The Plaintiffs also alleged that the Complaint is a core proceeding and that this Court has jurisdiction to enter a final judgment. The Plaintiffs also assented to the entry of a final judgment in the event the Court were to determine the adversary proceeding is non-core.

[4] According to the Plaintiffs, one of the Defendants, the estate of Luis Beltran Acevedo Ramos, is composed of Berta Miagros Acevedo Acevedo [sic] and "unknown heirs," identified as X, Y and Z. Additionally, the Plaintiffs have identified "John Doe Insurances [sic] A, B, and C" as Defendants.

Puerto Rico, and include conjugal partnerships,[5] decedents' estates, and the Registrar of the Property Registry in Aguadilla, Puerto Rico, which the Plaintiffs identify as "a government agency under the Department of Justice of the Commonwealth of Puerto Rico." In addition, the Plaintiffs named as Defendants, Subway Real Estate, LLC and Subway Real Estate Corp., alleging that they are corporations organized under the laws of Delaware with registered agents in Puerto Rico. They alleged that Defendant "Subway Rincon" is located in Rincon, Puerto Rico, although in a Motion to Dismiss Subway Real

---

[5] According to the court in In re Diaz Collazo, 524 B.R. 431 (Bankr. D. P.R. 2015),

> "In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." In re Padilla, 2011 Bankr.LEXIS 4662 at **10–11, 2011 WL 5911243 at *4 (Bankr.D. P.R. 2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3622 and 3641, and Fernández–Cerra v. Commercial Insurance Co. of Newark, 344 F.Supp. 314, 316 (D. P.R. 1972). The Civil Code of Puerto Rico denominates this new entity as the "conjugal partnership". See Articles 1295–1315 of the Civil Code, 31 L.P.R.A. §§ 3621–3681; F.D.I.C. v. Martínez Almodóvar, 671 F.Supp. 851, 873 (D. P.R. 1987) ("Under the law of Puerto Rico, a conjugal partnership is established by the act of marriage.") "By virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage." Article 1295 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3621. "All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife." Article 1322 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3647. . . .

In re Diaz Collazo, 524 B.R. at 435.

Estate Corp., while admitting that a Subway Sandwich Shop does business in Rincon, Puerto Rico, asserted that no entity known as "Subway Rincon" exists. The Defendant also named as Defendants the United States Small Business Administration and the United Sates Attorney. These governmental units, *see* 11 U.S.C. § 101(27), maintain offices in Puerto Rico but are not residents of Puerto Rico. Finally, the Plaintiffs identified "John Doe Insurances A, B, and C [sic]" as "corporations and/or entities organized under the laws of the Commonwealth of Puerto Rico with unknown physical addresses, adding that they had "the legal capacity to be sued" and "extended malpractice insurance to attorneys named in this Complaint and titles [sic] insurance policies executed by co-defendants."

Based upon an alleged series of events beginning in August of 1946 and occurring between the 1950s and the commencement of the Debtor's bankruptcy case, the Plaintiffs set forth claims for turnover of a gas station built in 1956 by a conjugal partnership composed of the Debtor's parents, two years before the dissolution of their marriage.[6] While noting that the Debtor commenced suit against his uncle in 1982 and commenced the liquidation process and probate of his father's estate in 1989, the Debtor's claims to relief appear to be predicated upon the alleged "illegal and fraudulent" sale, on October 14, 1998, by the Debtor's cousins, Domingo Fernando Acevedo Bayron and Ileana Acevedo Bayron, and the wife of his deceased uncle, Domingo Fernando Acevedo Ramos, namely Maria Asuncion Bayron Fussa, to the Ruiz-Arizmendi and Perez-Medina

---

[6] The Debtor's parents died intestate. The Debtor's father passed away in 1972; the Debtor's mother passed away in 1989.

conjugal partnership, which executed mortgages and leases to other named Defendants. The Plaintiffs named all the foregoing individuals and related conjugal partnerships as Defendants.

Based upon the complex series of events set forth in the Complaint, the Plaintiffs set forth the following in their prayers for relief:

> a) Orders the division and/or dissolution of the community property of Lot 903, 904, 237, 3946 and 1207 (the Gas Station) of Rincón pursuant to Article 1865 of the Puerto Rico Civil Code (31 L.P.R.A. § 5295) and the jurisprudence of the Puerto Rico Supreme Court.
>
> b) Declares that the dividends, profits and earnings generated by the Gas Station are "Property of the Estate" as defined in 11 U.S.C. § 542 and 1306; and thus orders the turnover of all earnings and dividends generated by the operation of the Gas Station. These dividends, profits and earnings are estimated to be no less than $23,000,000.00 dollars [sic].
>
> c) Cancel all liens and transactions regarding Lot 1207 -- as inscribed after the death of Debtor's Uncle by ordering such cancelation by the Registrar of the Property Registry of Aguadilla as stated and explained above.
>
> d) Orders an injunction directed to the Registrar of the Property Registry of Aguadilla prohibiting the inscription of documents or transactions in relation to Lot 1207 in Rincon where the Gas Station is erected until this controversy is adjudicated.
>
> e) Orders declaratory judgment declaring the Gas Station as unliquidated inherited property of the Acevedo-Ruiz Brothers as heirs of the Acevedo-Rivera Conjugal Partnership as defined by Article 1865 of the Puerto Rico Civil Code (31 L.P.R.A. § 5295) and ratified by the Puerto Rico Supreme Court in <u>Montalvan v. Rodriguez</u>, 101 D.P.R. 411 (2004) and ratified in <u>BL Investment v. Registrador</u>, 181 D.P.R. 5 (2011).
>
> f) Orders a declaratory judgment declaring unconstitutional the Law to Expedite the Property Registry for depriving the Acevedo-Ruiz Brothers of their rightful legal right over the Gas Station in violation of the Fifth and Fourteenth Amendment of the United State Constitution.[7]

---

[7] In paragraph 72 of the Complaint, the Plaintiffs alleged:

g) Awards damages and attorney's fees to Debtor as determined by this Court and allowed by the Bankruptcy Code pursuant to legal fees agreement [sic].

Beginning in late February 2016, numerous Defendants have filed an assortment of motions. On February 29, 2016, Defendants, Andres Ruiz Arizmendi, Cinthia Perez Medina, Ruiz Arizmendi-Perez Medina Conjugal Partnership and Ruiz Servicenter, filed a "Motion Requesting Transfer of Venue of the Adversary Proceeding 16-01011 to the District of Puerto Rico." On the same day, Defendant, Feliberto Ramirez Toro, filed a Motion to Join the Motion Requesting Transfer.

On March 1, 2016, Defendants, Domingo Acevedo Bayron, Ileana Acevedo Bayron, and Maria Asuncion Bayron Fussa, filed a Motion Joining the Motion Requesting the Transfer of Venue filed by Andres Ruiz Arizmendi, Cinthia Perez Medina, Ruiz Arizmendi-Perez Medina Conjugal Partnership and Ruiz Servicenter. Additionally, on March 4, 2016, they filed a Motion Pursuant to Bankruptcy Rule 7012(e) for a more definite statement.

On February 22, 2016, Subway Real Estate LLC and Subway Real Estate Corp. filed answers to the Plaintiffs' Complaint, quickly followed by Subway Real Estate Corp.'s "Motion to Dismiss 'Subway Rincon' for Failure to State a Claim upon which Relief Can

---

On December 27, 2010 the Commonwealth of Puerto Rico enacted Law No. 216. This is a bill to expedite the registration of property. Such Law deprived Debtor of the Gas Station since it allowed the inscription of the Ruiz-Pérez Conjugal Partnership ownership rights over of the Gas Station without due process and with disregard of the chain of ownership.

8

be Granted pursuant to Fed. R. Bankr. P. 12(b)(6) and Motion to Dismiss 'Subway Rincon' pursuant to Fed. R. Civ. P. 12(b)(4)(insufficient process) and 12(b)(5)(insufficient service of process)." On March 2, 2016, Subway Real Estate LLC and Subway Real Estate Corp. also filed an Opposition to the venue transfer motions. Additionally, on March 3, 2016, Subway Real Estate LLC filed a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 or, in the Alternative, Motion to Dismiss for Failing to State a Claim upon which Relief Can Be Granted. In addition, on March 2, 2016, Defendant, Banco Popular de Puerto Rico, filed a Motion to Dismiss.

B. The Debtor's Prior Chapter 13 Case

Prior to the filing of the instant bankruptcy petition and adversary proceeding, the Debtor, on March 23, 2012, filed a voluntary Chapter 13 petition which was dismissed on May 25, 2014, *see* In re Acevedo, No. 12-12393-JNF, 2014 WL 1664255 (Bankr. D. Mass. April 25, 2015).[8] In that case, on March 29, 2013, prior to obtaining confirmation of a Chapter 13 plan, the Debtor commenced an adversary proceeding (Adv. P. No. 13-1094) by filing a Complaint against 34 defendants, including all but six of the Defendants listed in the instant adversary proceeding ("the first adversary proceeding"). In the first adversary proceeding, the Debtor alleged essentially the same facts and asked the Court to enter the following relief:

> a) Makes [sic] determinations that there is property of the bankruptcy estate belonging to the Debtor through inheritance rights which is in the control of the mentioned Defendants;

---

[8] The Court denied the Debtor's Motion for Reconsideration of Dismissal, as well as his motion to convert his Chapter 13 case to a case under Chapter 11 on July 29, 2014.

9

    b) Orders [sic] immediate turnover of such property of the bankruptcy estate (to wit: subject property and income derived from since it became vested on Debtor).

    c) Determines [sic] that violations of the automatic stay existed as Defendants engaged into actions against the property of the estate post-petition;

    d) Order any all necessary attachments to preserve property of the estate;

    e) Awards damages and attorney's fees to Debtor as determined by this Court and allowed by the Bankruptcy Code . . .

In the first adversary proceeding, a number of Defendants moved to transfer venue to the United States Bankruptcy Court for the District of Puerto Rico, including Defendants, Domingo Acevedo Bayron, Ileana Acevedo Bayron, and Maria Asuncion Bayron Fussa; Defendants, Andres Ruiz Arizmendi, Cinthia Perez Medina, Ruiz Arizmendi-Perez Medina Conjugal Partnership and Ruiz Servicenter; and Defendant, Feliberto Ramirez Toro. On May 24, 2013, this Court granted the motions to transfer venue of the first adversary proceeding, stating, among other things, the following:

> In considering motions to transfer venue[,] courts consider the location of the debtor's property, the proximity of creditors to the district of proper venue, and the efficient administration of the estate. . . . [*See* Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629, 639 (Bankr. S.D.N.Y. 2004)].
>
>                                 \*\*\*\*
>
> With respect to the motion to transfer venue of the adversary proceeding to the District of Puerto Rico, I observe that venue was proper in this district for the adversary proceeding because the complaint raises issues that are related to the main bankruptcy case. The issue raised by the motion to transfer venue, which is joined by at least 15 parties, is whether venue of the adversary proceeding should be transferred either pursuant to 28 U.S.C.

[§§] 1404 or 1412, which codifies the doctrine of forum non conveniens . . . [*See also* Fed. R. Bankr. P. 7087].

Standards have developed in the case law. The decision on transfer of venue of an adversary proceeding is within the Court's discretion and the decision is based on a variety of factors. As noted by one of the parties, my colleague Judge Boroff has written the decision of <u>N. Parent, Inc.</u> . . . [<u>N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)</u>, 221 B.R. 609 (Bankr. D. Mass. 1998)], where he listed a number of those factors and I will list them for the record.[9]

\*\*\*

Applying these factors to the present case, I find that the issues surrounding the debtor's claim of property, which he seeks turned over to him and which he claims . . . [is] . . . property of the estate are to be determined solely by reference to the laws of the Commonwealth of Puerto Rico. The debtor's claims will require interpretation of a number of laws of Puerto Rico, laws relating to mortgages, laws relating to transfers of property, divorce laws, the laws of inheritance, the laws relating to the conjugal partnership of married people, laws relating to transfers of property and mortgage

---

[9] According to Judge Boroff:

Factors which a bankruptcy court should consider in determining whether to order a transfer under [28 U.S.C. ] § 1412 include: (1) the proximity of assets, creditor, debtor, its principals, evidence and witnesses to the court; (2) the economical and efficient administration of the estate; (3) the willingness of abilities of parties, debtor and creditors alike, to participate in the case or in the adversary proceeding, vis a vis one venue over another; (4) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance; (5) the applicability of state law to the case and adversary proceedings; (6) the intertwined relationships between debtors; (7) the necessity for ancillary administration; and (8) a local interest in having a localized controversy decided at home. <u>In re Columbia Western, Inc.</u>, 183 B.R. 660, 663 (Bankr. D. Mass.1995) (citing <u>In re Toxic Control Technologies, Inc.</u>, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988)). "The most important factor is said to be the 'economic and efficient administration of the estate.'" <u>In re Gurley</u>, 215 B.R. 703, 709 (Bankr. W.D. Tenn. 1997) (quoting <u>In re HME Records, Inc.</u>, 62 B.R. 611, 613 (Bankr. M.D. Tenn. 1986)).

<u>In re N. Parent, Inc.</u>, 221 B.R. 609, 631 (Bankr. D. Mass. 1998).

11

recordation regulations and, in particular, as referenced by the debtor in this complaint, a number of provisions of the Puerto Rico Civil Code . . . .

The totality of the factors in this case favor transfer of the adversary proceeding to the District of Puerto Rico. Indeed, the laws of Puerto Rico are the only laws at issue in this case. Moreover, none of the defendants are residents of the District of Massachusetts. Only two are not located in the District of Puerto Rico. All of the witnesses to the multiple transactions, sales of real estate, purchases of real estate, mortgage and leases of real estate, are all located either in Puerto Rico or Connecticut. The debtor's argument that witnesses will not be necessary in this adversary proceeding is without merit because it is premature. It is simply impossible to tell at this juncture whether dismissal or summary judgment for any party is permissible. The employees of the governmental units, which are defendants, are all located in Puerto Rico. By virtue of the Federal Rules of Civil Procedure, all depositions have to take place in the Commonwealth of Puerto Rico with the exception of the Connecticut defendants. The plaintiff indeed is the only party in this adversary proceeding in the District of Massachusetts and this factor does not outweigh the other overwhelming factors.

I find that the argument of the Subway defendants that venue should remain in Massachusetts because this jurisdiction is more convenient for it . . . lack[s] merit, particularly where the franchise that is the subject of several of the debtor's claims is located in the District of Puerto Rico. I also deny Subway's request that this Court determine the motions to dismiss prior to any transfer to Puerto Rico. As I noted earlier, the viability of the plaintiff's complaint will depend on whether it states a plausible claim for relief under Puerto Rico law. The defenses are dependent on Puerto Rico law. And the Bankruptcy Court or the courts of the Commonwealth of Puerto Rico are better suited to determine these issues under Puerto Rico law. . . .

The Debtor appealed the Court's May 24, 2013 order to the United States Bankruptcy Appellate Panel for the First Circuit, which, on June 7, 2013, entered a judgment of dismissal for lack of jurisdiction, declining to exercise its discretion to hear the interlocutory appeal. On June 11, 2013, the Bankruptcy Appellate Panel denied the Debtor's Motion for Reconsideration of dismissal. The Debtor then appealed the decision

of the Bankruptcy Appellate Panel to the United States Court of Appeals for the First Circuit, which dismissed the appeal for lack of finality on October 10, 2013.

## III. DISCUSSION

The motions to transfer venue pending in the instant adversary proceeding mirror the motions and issues raised in the first adversary proceeding, although in the Debtor's prior Chapter 13 case the Court had not entered a confirmation order. Under those circumstances, this Court would be justified in granting the pending motions to transfer venue for the reasons stated on the record on May 24, 2013. The factors addressed by the Court in its bench ruling are still present.

A. <u>Law Applicable to Permissive Abstention</u>

This Court may sua sponte abstain from determining the merits of this adversary proceeding. *See* 28 U.S.C. § 1334(c)(1). *See* <u>Gilbane Building Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)</u>, 337 B.R. 864, 877 (Bankr. S.D. Tex. 2006), *aff'd*, No. ADV. 02-43582-11, 2006 WL 1207743 (S.D. Tex. May 3, 2006)("Whereas mandatory abstention must be raised by motion of a party, permissive abstention may be raised sua sponte"); <u>LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.)</u>, 312 B.R. 249, 256 (Bankr. D. Del. 2004)(observing that § 1334(c)(1) "permits permissive abstention at the Court's discretion. It does not require a motion and can be raised by a court sua sponte."). *See also* <u>Gober v. Terra + Corp. (In re Gober)</u>, 100 F.3d 1195, 1207 n.10 (5th Cir. 1996).

Section 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from

13

abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The United States Court of Appeals for the First Circuit in In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61 (1st Cir. 2002), interpreted § 1334(c)(1). It stated:

> The statute itself delineates "three . . . criteria to determine whether abstention is appropriate": the interests of justice, comity, and respect for state law. In re Pan Am. Corp., 950 F.2d at 845. Other circuits have considered several factors in the determination of whether permissive abstention is appropriate, including: "the extent to which state law issues predominate over bankruptcy issues"; "the presence of a related proceeding commenced in state court or other nonbankruptcy court"; and "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties." See Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166–67 (9th Cir.1990) (quoting Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)) (internal quotations omitted) (adopting a twelve-factor test to ascertain whether permissive abstention is appropriate in any given case); see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993) (same).

In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69-70. In the decision referenced by the First Circuit Court of Appeals, Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 F.3d 1184 (7th Cir. 1993), the Seventh Circuit Court of Appeals identified factors relevant to permissive abstention:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered

14

>   in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 F.3d at 1189 (quoting In re Eastport Assoc., 935 F.2d 1071, 1075–76 (9th Cir. 1991), and In re Tucson Estates, Inc., 912 F.2d 1162, 1167 (9th Cir. 1990)(footnote omitted)).  The Seventh Circuit observed that the factors should be applied flexibly because their relevance and importance varies with the particular circumstances of each case, adding that "no one factor is necessarily determinative." Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 F.3d at 1189. The court also emphasized "whether a case involves unsettled issues of state law is always significant." Id. (citing, *inter alia,* Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483 (1940)).

   B. Analysis

As a preliminary matter, this adversary proceeding is not a core proceeding and is only related to the bankruptcy case in certain respects.  See 28 U.S.C. § 157(b)(2)(A)-(P). Moreover, because co-Plaintiffs, Juan M. Ruiz Rivera and Vicente Perez Acevedo, are asserting claims against non-debtor entities, this Court lacks jurisdiction to consider their claims as any recovery by them against the Defendants will have no conceivable impact on the Debtor's bankruptcy estate.  See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by* Things Remembered v. Petrarca, 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995)); In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991),

*overruled on other grounds by* Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

Turning to the factors pertinent to permissive abstention, a review of those factors unequivocally establishes that abstention is warranted, particularly where the laws of the Commonwealth of Puerto Rico are not just integral to, but determinative of, the Plaintiffs' claims. In the first place, abstention will not adversely effect the efficient administration of the bankruptcy estate. This adversary proceeding is non-core and is related to the Debtor's case only with respect to *his* claims against the Defendants. None of the Defendants have filed proofs of claim, however, and the Debtor's confirmed plan merely provides that if he obtains a recovery he will move to amend his plan to increase the dividend payable to his existing creditors. Notably, this factor is similar to "[t]he most important factor" for transferring venue, namely "the 'economic and efficient administration of the estate.'" In re N. Parent, Inc., 221 B.R. 609, 631 (Bankr. D. Mass. 1998).

The allegations in the adversary proceeding and the Plaintiffs' prayers for relief reveal that state law issues predominate. Although the Plaintiffs seek a determination that the Debtor's interests in property in Rincon, Puerto Rico are property of his bankruptcy estate and that the property should be turned over to him, *see* 11 U.S.C. §§ 541, 542, that relief is entirely dependent upon whether the Debtor and the other two Plaintiffs prevail on their claims under Puerto Rican law, including a determination that "Law No. 216 . . . a bill to expedite the registration of property" is unconstitutional. Not only would comity dictate that a court in Puerto Rico determine the constitutionality of a

Puerto Rican law, the Civil Code of Puerto Rico is Spanish in origin, *see generally* Matos-Rivera v. Flav-O-Rich, 876 F.Supp. 373, 376 n.1 (D. P.R. 1995),[10] and all laws, pertinent decisions, and relevant documents are in Spanish and would have to be translated. Although translations can be, and indeed may have been obtained for some documents, the courts in Puerto Rico are best suited for interpreting the laws of Puerto Rico and relevant documents without issues relating to proper translations, not just of the laws but of case law interpreting those laws.

There is no independent basis for bankruptcy court jurisdiction apart from the Debtor's bankruptcy case. As noted above, the adversary proceeding is merely related to the Debtor's main case; his Chapter 13 plan has been confirmed; and any possible recovery against the numerous Defendants might take longer than the duration of the Debtor's 60-month plan, the effective date of which was December 1, 2014. Moreover, this Court's jurisdiction to determine any claims held by the non-debtor Plaintiffs against

---

[10] The court cited José Trías Monge, *The Structure of the American Legal System*, 51 Rev.Jur.P.R. 11, 12 (1982), and stated:

> "Puerto Rico has a mixed legal system. The Spanish Civil Code of 1888 and the Commerce Code of 1885, with alterations, are still in effect in Puerto Rico as well as many other basic laws of Spanish origin. The system still has a Civil Law cast, but American law and techniques dominate the fields. Despite the obviousness that the genesis of Puerto Rico's laws lies in both the Spanish Civil Code and the Anglo–American common law, the Puerto Rico Supreme Court has never stated or ruled in any of its hundreds of opinions the reality that Puerto Rico is a mixed jurisdiction. . . ."

Matos-Rivera v. Flav-O-Rich, 876 F.Supp. at 376 n.1.

17

the Defendants is doubtful. Thus, it is eminently feasible to sever the adversary proceeding from the main case.

The adversary proceeding is also a burden on the non-resident Defendants and the Bankruptcy Court. Because all of the Defendants and one of the Plaintiffs are non-residents of Massachusetts, most would have to travel to the mainland United States or seek to appear telephonically at court hearings to avoid the costs incident to travel from Puerto Rico to Boston, Massachusetts. Given the number of Defendants, and the inconvenience associated with recording hearings at which so many parties might wish to appear telephonically, the Court would have to allocate considerably more time for hearings on motions than in a typical adversary proceeding. Moreover, in view of the the rapidly proliferating number of requests for relief that typically would be scheduled for hearing, the burden on the Court would be considerable.

Because the Debtor has alleged that various lots and the gas station in Rincon, Puerto Rico were "illegally and fraudulently" transferred, it is conceivable that various parties may claim a right to a jury trial to which they may be entitled. *See generally* Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 36 (1989)(holding that a non-claimant defendant to a fraudulent conveyance action under the Bankruptcy Code has a right to a jury trial).

In summary, only two of the twelve factors identified by the United States Court of Appeals for the Seventh Circuit in Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 F.3d at 1189, are absent, namely the presence of a related proceeding commenced in Puerto Rico, and the likelihood that the bankruptcy proceeding involves forum

shopping. This Court notes, however, that the Plaintiffs alleged that the Debtor commenced actions in Puerto Rico in 1982 and 1989, the outcome of which were not revealed. In the event that any judgments entered against the Debtor in those prior actions that are related to the claims set forth in the instant adversary proceeding, the Rooker-Feldman doctrine, which "applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments,'" *see* DuLaurence v. Telegen, 94 F. Supp. 3d 73, 79 (D. Mass. 2015)(citing Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517 (2005)), might divest this Court of jurisdiction.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall enter an order abstaining from this adversary proceeding.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 15, 2016